Michael H. Simon, OSB No. 860908
MSimon@perkinscoie.com
Sarah J. Crooks, OSB No. 971512
SCrooks@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

Attorneys for Defendant Qwest Corporation

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| NICKOLAS FACAROS, | Case No. 10-6343-HO |
| Plaintiff, | |
| v. | **AMENDED MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS** |
| QWEST CORPORATION, a Colorado Corporation, | |
| Defendant. | |

## I.    INTRODUCTION

On three occasions, once in 2008 and twice in 2010, Building Movers contacted Qwest about moving a house in Eugene, Oregon.  Building Movers wanted Qwest to raise and lower Qwest's aerial cable facilities (telephone wires) to allow a house to pass underneath the cable facilities as the house was moved from one location to another.  For each house move, Qwest issued to Building Movers (attention Chris Schoap) a "special construction proposal" for the proposed work by Qwest.  The proposals stated the amount that Qwest required as payment in

advance of each house move.  For each house move, Chris Schoap signed the special construction proposal that was returned to Qwest, and Qwest received payment in advance of the proposed work.  Qwest performed the work under the special construction proposals, helping to facilitate the three house moves.[1]

Plaintiff, Nickolas Facaros, not Building Movers or Chris Schoap, brings this action, alleging that Qwest is guilty of federal racketeering based on the three transactions described above.  In support of his RICO claim, Facaros does little more than:  (1) identify three house moves in 2008 and 2010; (2) allege that Qwest billed "fraudulent" charges, committed mail fraud and had a scheme to defraud customers; and (3) recite the elements of RICO under 18 U.S.C. § 1962.  Facaros accuses Qwest of racketeering activity based on speculation and the single conclusory allegation that Qwest billed him for "fraudulent and unlawful charges" in excess of Qwest's actual billing rates for the work done.  The Court should dismiss Facaros's RICO lawsuit.  The RICO claim is deficient on numerous grounds, including failure to state a facially plausible claim, failure to provide the particularity required by Rule 9(b) for allegations of fraud, failure to state a claim upon which relief can be granted, and lack of standing.  For each of these reasons, the Court should reject Facaros's attempt to use RICO—originally enacted to address organized crime, not contract disputes—to get federal jurisdiction over his $9,000 dispute with Qwest regarding the amounts charged to facilitate Facaros's three house moves.

Facaros also brings state law claims for violation of the Oregon Unlawful Trade Practices Act, deceit, and tortious breach of the duty of good faith based on the same allegedly fraudulent conduct of billing for certain work related to Facaros's house moves.  Facaros's state law claims are also deficient on several grounds, and the Court should dismiss each of these claims as well.

---

[1] Because Facaros does not provide this background information in the Complaint, Qwest offers these introductory comments to help the Court understand the disputed transactions.  In addition to the Complaint, these facts are based on and reasonably inferred from the information stated in the three special construction proposals, which are specifically referenced in the Complaint and thus may be considered by the Court on this motion to dismiss.  The three special construction proposals are attached as exhibits to the Declaration of Dale VanGulick.

2- AMENDED MEMORANDUM IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Like his RICO claim, Facaros's allegations of fraud, misrepresentations, and omissions fail to meet the specificity requirements of Rule 9(b).  His state law claims are all premised on speculation of "fraud" and alleged "misrepresentations" and "failures to disclose" without providing any detail explaining:  (1) who made the alleged misrepresentations and to whom; (2) the content of the misrepresentations; (3) when, where and how the misrepresentations were made; and (4) why the misrepresentations are false or misleading.  Similarly, Facaros does not provide any detail about what information Qwest failed disclose or how the alleged omissions were false or misleading.  Facaros does not even describe the "work" or "services" about which he complains or explain how he should be the party to bring claims based on the special construction proposals issued by Qwest to "Building Movers" and "Chris Schoap."  The Court should dismiss Facaros's state law claims because the fraud allegations fail to satisfy Rule 9(b) and the allegations supporting the claims violation of the UTPA and tortious breach of the duty of good faith fail to state claims upon which relief can be granted.

## II.    FACTUAL BACKGROUND[2]

Plaintiff, Nickolas Facaros, lives in Eugene, Oregon.  Compl. ¶ 1.  Qwest is a public service corporation authorized to provide telephone and other communications services in Oregon.  *Id.* ¶ 2.  Facaros has moved houses from one location to another in Eugene, Oregon on three separate occasions in October 2008, May 2010 and August 2010.  *Id.* ¶¶ 6, 8.  For each house move, Facaros has been required to pay to Qwest "several thousand dollars under a 'special construction proposal and terms and conditions,'" and Qwest has required advance payment prior to "agreeing to allow the work to be scheduled."  *Id.* ¶ 7.

For the second and third house moves, Facaros contends that Qwest billed him "fraudulent and unlawful charges far exceeding [Qwest's] actual billing rates for the work that

---

[2] For the purpose of this motion to dismiss only and to the extent the allegations are not contradicted by the special construction proposals referenced in Complaint, Qwest accepts Facaros's factual allegations in the Complaint as true.  Qwest reserves the right to challenge the truth of Facaros's allegations at a later time.

3-    AMENDED MEMORANDUM IN SUPPORT OF
        DEFENDANT'S MOTION TO DISMISS

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

was done." *Id.* ¶ 9.  Facaros further speculates that for the first house move, Qwest also billed him "fraudulent and unlawful charges far exceeding [Qwest's] actual billing rates for the work that was done" and that during the past ten years, Qwest has billed others who moved houses for fraudulent and unlawful charges.  *Id.* ¶ 10.

Based on these allegations, Facaros asserts the following claims:

1.      Violation of RICO, 18 U.S.C. § 1962(a), (c), and (d);

2.      Violation of the Oregon Unlawful Trade Practices Act, ORS 646.608(1)(k), (s);

3.      Deceit; and

4.      Tortious breach of duty of good faith and fair dealing.

As discussed in more detail below, the Court should dismiss each of Facaros's claim and the Complaint in its entirety.

## III.      STANDARDS

To state a claim, a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.  A claim has "facial plausibility" when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable to the plaintiff for the misconduct alleged.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557).  Furthermore, this Court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

In addition, where, as here, a complaint brings causes of action based on a unified course of allegedly fraudulent conduct, the complaint sounds in fraud, and the allegations supporting

4-      AMENDED MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

those causes of action must satisfy the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. *See, e.g.*, *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). This exacting standard, which surpasses mere "notice" pleading, requires the allegation of "the time, place and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1999); *see also In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547-48 (9th Cir. 1994) (emphasis omitted) (Claims subject to Rule 9(b) must plead "particularized allegations of the circumstances constituting fraud," which should include "[t]he time, place, and content of an alleged misrepresentation" in addition to "the circumstances indicating falseness."); *Newman v. Comprehensive Care Corp.*, 794 F. Supp. 1513, 1518 (D. Or. 1992) ("In all claims of fraud, plaintiffs are required to state the circumstances constituting the misconduct with particularity."); *Ius v. Butcher*, 680 F. Supp. 343, 346 (D. Or. 1987) (dismissing fraud claims because they failed to allege with particularity "the time, place, and contents of false representations" and "the identity of the person making the misrepresentation"). Mere conclusory allegations of fraud are not sufficient. *See Allen v. Oregon Steel Mills, Inc.*, No. 88-898-DA, 88-952-DA, 1988 WL 159178 (D. Or. Dec. 7, 1988) (dismissing fraud claim for failure to state the time, place, and specific content of the misrepresentations, the identities of the parties to them, and the role of each defendant in the fraud). "[C]onclusory allegations of fraud . . . punctuated by a handful of neutral facts" are insufficient. *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d at 1548 (internal quotation marks and citation omitted).

When deciding a Rule 12(b)(6) motion to dismiss, the Court may consider documents that are not attached to the complaint without converting the motion into a motion for summary judgment where the plaintiff "refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see also Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). The Court must "treat such . . . document[s] as part of the complaint, and . . . assume that [their] contents are true for purposes of

5- AMENDED MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

[this] motion to dismiss under Rule 12(b)(6)." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (internal quotation marks and citations omitted). Because the special construction proposals for the three house moves at issue in the Complaint are the bases for Facaros's claims, the Court may consider the special construction proposals specifically referred to in the Complaint and attached as Exhibits 1, 2, and 3 to the Declaration of Dale VanGulick.

## IV.    ARGUMENT

**A.    The Court should dismiss the RICO Claim because Facaros fails to allege a plausible RICO claim, he fails to allege fraud with any particularity, he fails to properly allege "enterprise," and he lacks standing.**

Facaros generally alleges that Qwest violated 18 U.S.C. § 1962(c), Racketeer Influenced and Corrupt Organizations Act ("RICO"), by participating directly or indirectly in the conduct of the affairs of "the enterprise" through a pattern of racketeering activity based on more than two occurrences of mail fraud in the past ten years to further a continuing scheme to defraud its customers. Compl. ¶ 14. Facaros defines the "enterprise" or "enterprises" as Qwest. *Id*. ¶ 12. Facaros then alleges that, to further its scheme to defraud, Qwest mailed and received through the U.S. Mail the "billings" described in the Complaint in violation of 18 U.S.C. § 1341. *Id*. ¶ 14. Facaros then contends that Qwest violated subsections (a), (c), and (d) of 18 U.S.C. § 1962 by (1) investing the income derived from the pattern of racketeering activity in the enterprise; (2) associating with the enterprise and conducting the affairs of the enterprise through a pattern of racketeering activity; (3) conspiring to invest the income in the enterprise; and (4) conspiring to associate with the enterprise and to conduct the affairs of the enterprise. *Id*. ¶ 17. For damages, Facaros alleges that his "business or property" was injured by the racketeering activities, and he seeks $9,000 to be trebled to $27,000 plus pre-judgment interest, costs and attorney fees. *Id*. ¶¶ 18, 19, 20. Facaros also seeks punitive damages because he alleges Qwest's conduct was intentional. *Id*. ¶ 21.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

**1.      The RICO claim fails because Facaros does not allege a facially plausible claim and he does not allege fraud with sufficient particularity.**

As the predicate acts in his RICO claim, Facaros alleges that Qwest committed mail fraud punishable under 18 U.S.C. § 1341.  The elements of mail fraud are:  (1) a scheme to defraud or to obtain money or property by means of false pretense, representations or promises; (2) use of the mails for the purpose of executing the scheme; and (3) a specific intent to defraud, either by devising, participating in or abetting the scheme.  Facaros simply recites that Qwest has used on more than two occasions the U.S. Mail to send "billings" to further a "scheme to defraud" and that Qwest has billed Facaros "fraudulent and unlawful charges far exceeding [Qwest's] actual billing rates for the work that was done."  Compl. ¶¶ 9,14, 15, 16.  Facaros's formulaic recitation of the mail fraud elements with an allegation of "fraudulent and unlawful charges" does not comply with Rules 8(a) and 9(b), and the Court should dismiss the RICO claim.

Facaros fails to provide sufficient facts that allow the Court to conclude that Facaros's claim is facially plausible, and the Complaint is utterly devoid of the requisite specificity for fraud.  Facaros's factual allegations fail to raise a right to relief above the speculative level, and his factual allegations "stop short of the line between possibility and plausibility of entitlement to relief."  *Iqbal*, 129 S. Ct. at 1949 (internal citations and quotations marks omitted).  And Facaros fails to allege the time, place, and content of the allegedly fraudulent statements or billings, and he fails to allege any facts showing the circumstances indicating falseness, fraud or unlawfulness.  Facaros does not even describe what services Qwest provided relating to the house moves, let alone allege any facts showing how the charges exceeded Qwest's actual billing rates for the "work" done.  Facaros also fails to describe with sufficient detail the alleged "scheme to defraud."  The Court should dismiss the RICO claims and this action, because Facaros's allegations fail to satisfy Rules 8(a) and 9(b).

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

2.    **The Court should dismiss the alleged violations of section 1962(c) and (d) because Facaros alleges that Qwest is both the "person" and the "enterprise."**

Qwest is the sole defendant in this RICO action, and Facaros has defined Qwest as the "enterprise" or "enterprises" in his RICO claim. Compl. ¶ 12. As the U.S. Supreme Court has held, it is a basic principle that to establish liability under section 1962(c), the plaintiff "must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, LTD v. King*, 533 U.S. 158, 161 (2001). The Court further explained that "the person and the victim, or the person and the tool, are different entities, not the same." *Id*. at 162. Additionally, the Ninth Circuit has long held that "a single individual or entity cannot be both the RICO enterprise and an individual RICO defendant." *River City Markets, Inc. v. Fleming Foods West, Inc.*, 960 F.2d 1458, 1461 (9th Cir. 1992). In other words, "an individual cannot associate or conspire with himself." *Id*. Accordingly, Facaros's allegations that Qwest violated RICO pursuant to 18 U.S.C. § 1962(c) and (d) should be dismissed.

3.    **The Court should dismiss Facaros's RICO claim because he has failed to show that the alleged RICO violations were the cause of his alleged injury and thus he lacks standing.**

Facaros complains about billings for allegedly fraudulent and unlawful charges, but Facaros fails to allege facts sufficient to establish that the alleged RICO violations are the cause of his injury. *Steele v. Hospital Corp. of Am.*, 36 F.3d 69, 71 (9th Cir. 1994). Facaros must establish a "direct relationship between the injury asserted and the injurious conduct alleged." *Id*. Facaros fails to do so, and thus, he lacks standing.

As an initial matter, Qwest issued special construction proposals for the three house moves to "Building Movers" and to the attention of "Chris Schoap" at a particular post office box in Eugene, Oregon. Decl. of Dale VanGulick, Exs. 1-3. Facaros fails to explain how he suffered any injury related to the mailing of these special construction proposals to Building Movers and Chris Schoap. Facaros also fails to establish how he suffered any injury in his business or

8-   AMENDED MEMORANDUM IN SUPPORT OF
     DEFENDANT'S MOTION TO DISMISS

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

property through a financial loss. Accordingly, the Court should dismiss the RICO claim because Facaros lacks standing.

**B.     The Court should also dismiss the state Unlawful Trade Practice Act claim because Facaros fails to allege with particularity the alleged misrepresentations, the Qwest services at issue were obtained for a business purpose, and the claim is time-barred with respect to the 2008 transaction.**

Facaros alleges that Qwest "conducted transactions with [Facaros] for purchase of services which Qwest requires to be purchased when someone moves a house a substantial distance on public streets within the City of Eugene." Compl. ¶ 24. Facaros then alleges that Qwest violated the Oregon Unlawful Trade Practices Act ("UTPA") by (1) making "false and/or misleading representations concerning the nature of the transaction or obligation incurred by [Facaros]"; and (2) making "false and/or misleading representations of fact to [Facaros] concerning the offering price or cost for [Qwest's] goods and/or services" in violation of ORS 646.608(1)(k), (s). Facaros alleges he suffered damages of $9,000 and seeks pre-judgment interest, costs, attorney fees and punitive damages.

**1.     Facaros fails to specify the time, place, content and circumstances of the alleged false and/or misleading statements; therefore, the Court should dismiss the UTPA claim.**

In support of his UTPA claim, Facaros contends that Qwest made misrepresentations "concerning the nature of the transaction or obligation incurred by [Facaro]" and "concerning the offering price or cost for [Qwest's] goods and/or services." Averments of fraud, such as these alleged misrepresentations, must be accompanied by "who, what, when, where, and how" of the misconduct charged. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (citation omitted). "[A] plaintiff must set forth *more* than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Decker v. GlenFed, Inc.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (emphasis in original).

Measured against the specificity requirements of Rule 9(b), the allegations in the Complaint do not even attempt to provide the required detail. In the Complaint, Facaros simply

9-  AMENDED MEMORANDUM IN SUPPORT OF
    DEFENDANT'S MOTION TO DISMISS

13141-0856/LEGAL19764271.1

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

identifies the three house moves at issue and alleges that Qwest made misrepresentations. Facaros fails to identify the specific representations that he contends are false and/or misleading, nor does he provide "the who, what, when, where and how" of the alleged misrepresentations. Facaros's conclusory allegations that Qwest made misrepresentations are devoid of *any* detail, let alone the required detail. The Court should dismiss the UTPA claim.

### 2. The Qwest "services" were obtained for business purposes, thus the Court should dismiss the UTPA claim.

Facaros's UTPA claim is based on "services" of Qwest relating to moving a house along public streets. The UTPA governs "services . . . which are . . . obtained primarily for personal, family or household purposes." ORS 646.605(6). Services obtained for a business purpose are not subject to the UTPA. *See Graham v. Kold Kist Beverage Ice, Inc.*, 43 Or. App. 1037, 1040, 607 P.2d 759 (1979) (UTPA not intended to cover commercial transactions because "the primary purpose of the Act was to protect consumers, rather than businesses.") As stated on the special construction proposals, Qwest's services relating to the three house moves were obtained by a business—Building Movers—and thus obtained for a business purpose. Additionally, in support of his RICO claim, Facaros alleges that he was injured in his "business or property," and thus, Facaros has alleged a "business" injury. Therefore, Facaros cannot state a UTPA claim for the Qwest "services" obtained for a business purpose, and the Court should dismiss the UTPA claim.

### 3. Facaros's UTPA claim based on the 2008 house move is time-barred.

The UTPA claim is based on three transactions, including one occurring in October 2008. The UTPA has a one-year statute of limitation on private causes of action. ORS 646.638(6). Because it is time-barred, the Court should dismiss the UTPA claim with respect to the October 2008 transaction.

### C. The Court should dismiss the deceit claim because Facaros fails to provide the requisite detail for the allegations of fraud.

In support of his "deceit" claim, Facaros again points to the "billings" that Qwest allegedly "gave" Facaros and then simply alleges that Qwest either failed to disclose or made

10- AMENDED MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

affirmative misrepresentations or both, and thus misled Facaros "regarding the amount or costs [Qwest] could charge" him.  Compl. ¶ 32.  As discussed above with Facaros's RICO and UTPA claims, Facaros does not allege fraud with the detail required by Rule 9(b).  Specifically, Facaros has failed to allege the "who, what, when, and how " of the alleged affirmative misprepresentations or the alleged omissions and why the representations are false or why the omissions misled him.  Without the requisite detail, the Court must also dismiss Facaros's deceit claim for failure to satisfy Rule 9(b).

**D.    The Court should dismiss the tortious breach of duty of good faith and fair dealing claim because no special relationship exists between Qwest and Facaros, and the fraud allegations again fail to satisfy Rule 9(b).**

Facaros alleges as his "Count Four," a claim for "Tortious Breach of Duty of Good Faith and Fair Dealing."  In support of that claim, Facaros alleges that Qwest owed a duty of good faith and fair dealing to him because Qwest is a monopoly, "a necessary player" when he moves houses and sets its price on a "take it or leave it basis."  Compl. ¶¶ 40, 41.  Facaros then contends that Qwest breached its duty of good faith and fair dealing by "intentionally preparing and giving [Facaros] billings which including [sic] improper charges and which, either by failures to disclose or affirmative misrepresentations or both, misled [Facaros] regarding the amount of costs [Qwest] could charge [Facaros]."  *Id*. ¶ 42.  Facaros fails to allege the basic elements of a claim for tortious breach of the duty of good faith and the fraud allegations again fail to meet Rule 9(b)'s specificity requirements.

The Oregon Supreme Court discussed a claim for "tortious breach of the duty of good faith" in *Uptown Heights Assocs. Ltd P'ship v. Seafirst Corp.*, 320 Or. 638, 891 P.2d 639 (1995), where a plaintiff alleged that it had a "special relationship" with the other party to a contract.  In *Uptown*, the Oregon Supreme Court looked to its decision in *Georgetown Realty v. The Home Ins. Co.*, 313 Or. 97, 831 P.2d 7 (1992), to define the alleged claim of tortious breach of the duty of good faith:

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

> When the relationship involved is between contracting parties, and the gravamen
> of the complaint is that one party caused damage to the other by negligently
> performing its obligations under the contract, then, and even though the
> relationship between the parties arises out of the contract, the injured party may
> bring a claim for negligence *if the other party is subject to a standard of care*
> *independent of the terms of the contract*.  If the plaintiff's claim is based solely on
> a breach of a provision in the contract, which itself spells out the party's
> obligation, then the remedy normally will be only in contract, with contract
> measures of damages and contract statutes of limitation.  That is so whether the
> breach of contract was negligent, intentional, or otherwise.

*Uptown Heights*, 320 Or. at 648-49 (quoting *Georgetown Realty*, 313 Or. at 106) (emphasis in original).  The requisite "special relationship" must be one in which "one party has authorized the other to exercise independent judgment on his or her behalf and, consequently, the party who owes the duty has a special responsibility to administer, oversee, or otherwise take care of certain affairs belonging to the other party."  *Bennett v. Farmers Ins. Co. of Oregon*, 332 Or. 138, 161, 26 P.3d 785 (2001) (quoting Conway v. Pacific Univ., 324 Or. 231, 241, 924 P.2d 818 (1996)).  The court's focus in analyzing whether a "special relationship" exists is on "whether the *nature of the parties' relationship itself* allowed one party to exercise control in the first party's best interest."  *Id.* (emphasis in original).  "[T]he law does not imply a tort duty simply because one party to a business relationship begins to dominate and to control the other party's financial future."  *Id.* at 161-162.

As an initial matter, Facaros fails to allege that he and Qwest entered into a contract and thus had a contractual relationship.  Instead, Facaros merely refers to "billings" and the special construction proposals.  Compl. ¶¶ 7, 42.  Qwest issued the three special construction proposals to "Building Movers."  VanGulick Decl. Exs. 1, 2, and 3.  Facaros also does not allege that Qwest negligently performed its obligations under the special construction proposals or any other contract.  Rather, Facaros alleges that Qwest intentionally billed Facaros on the special construction proposals for improper charges.  Because the special construction proposals include the amounts that Qwest charged for its services relating to each of the three house moves,

12- AMENDED MEMORANDUM IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Facaros has failed to sufficiently plead that Qwest failed to perform its obligations under the proposals. Finally, Facaros fails to allege facts establishing that Qwest is subject to a standard of care independent of the terms of the special construction proposal. Qwest does not have a special relationship with Facaros arising from the special construction proposals—only one of which even references Facaros. To the extent that Qwest has a relationship with him, contractual or otherwise, Facaros does not allege facts showing that the nature of the relationship allowed Qwest to exercise control in Facaros's best interests. Accordingly, the Court should dismiss the tortious breach of duty of good faith claim for failure to state a claim.

Additionally, even if Facaros had stated a claim for tortious breach of the duty of good faith, the allegations of misrepresentations and omissions underpinning this claim also fail to meet Rule 9(b) for the same reasons discussed above regarding Facaros's other three claims based in fraud. The Court should dismiss the claim for this additional deficiency.

## V.    CONCLUSION

Facaros brings this RICO action and state-law claims based on a unified course of allegedly fraudulent conduct—an alleged scheme by Qwest to defraud its customers—yet Facaros fails to allege the requisite details regarding the "who, what, when, where, how and why" regarding the allegedly false and/or misleading statements or omissions underpinning the alleged violations of RICO and the UTPA and state-law claims. The special construction proposals referenced in the Complaint also call into question Facaros's basis to be the party asserting these claims. Facaros's claims each suffer from additional deficiencies, including failure to state a claim upon which relief can be granted, that require the Court to dismiss. For these reasons, the Court should dismiss the Complaint in its entirety.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

DATED:  December 14, 2010          **PERKINS COIE** LLP


By: s/ *Sarah J. Crooks*
_____
    Michael H. Simon, OSB No. 860908
    MSimon@perkinscoie.com
    Sarah J. Crooks, OSB No. 971512
    SCrooks@perkinscoie.com
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

Attorneys for Defendant Qwest Corporation

14-  AMENDED MEMORANDUM IN SUPPORT OF
    DEFENDANT'S MOTION TO DISMISS