Marianne Dugan (OSB # 93256)
Internet e-mail address mdugan@mdugan.com
259 E. 5th Ave., Ste 200-D
Eugene, OR 97401
(541) 338-7072
Fax no. 866-650-5213
    Of Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| NICKOLAS FACAROS,<br><br>    Plaintiff,<br><br>v.<br><br>QWEST CORPORATION, a Colorado Corporation<br><br>    Defendant. | No. 10-CV-006343-HO<br><br>PLAINTIFFS' FIRST AMENDED COMPLAINT<br><br>(Violation of RICO; Unlawful Trade Practices; Deceit) |

    Plaintiff Nickolas Facaros brings this complaint for money damages and injunctive relief under RICO, 18 U.S.C. § 1961 et seq.; the Oregon Unlawful Trade Practices Act (O.R.S. 646.608); and under Oregon common law (deceit).

PARTIES

    1.    At all material times, plaintiff Nickolas Facaros has resided in Eugene, Lane County, Oregon.

    2.    Qwest Corporation (Qwest) is a public service corporation incorporated under the laws of the State of Colorado with its principal place of business in Denver, Colorado. Qwest is

PAGE 1 – PLAINTIFF'S FIRST AMENDED COMPLAINT

authorized to do business in Oregon and maintains its primary business office in the State of Oregon in Multnomah County. Qwest is authorized to provide telephone and other communications services in Oregon.

## JURISDICTION AND VENUE

3.  The federal claim in this action arises under RICO, 18 U.S.C. 1961 et seq.. The Court has jurisdiction over plaintiff's claims pursuant to 28 U.S.C. 1331.

4.  Pendent jurisdiction for the state claims exists under 28 U.S.C. 1367.

5.  Venue is proper in this judicial district pursuant to the provisions of 28 U.S.C. 1391(b) in that this is a civil action wherein jurisdiction is not founded on diversity of citizenship and plaintiff's claims arise within this judicial district.

## FACTUAL ALLEGATIONS

6.  On three occasions, plaintiff has moved houses from one location to another within the City of Eugene, Oregon, and in doing so, was required to purchase services from Qwest.

7.  The three occasions are:

    a.  October 19, 2008 – moving a house to 856 W. 26th Ave., Eugene, OR.

    b.  May 2010 – moving a house to 859 W. 29th Ave., Eugene, OR

    c.  August 2010 – moving a house to 1870 W. 10th Ave., Eugene, OR

8.  The transaction at issue is plaintiff's purchase of Qwest's service to move lines, along with the services of others involved in route costs, so a house can be moved down a public street to another location.

9.  Plaintiff purchased these services from Qwest for his or someone else's use and

not for resale, through his agent, a house mover, Chris Shoap.

10. Plaintiff could not move any of the three houses without engaging Qwest's services.

11. Plaintiff could not hire anyone else at any price to temporarily move Qwest's lines, as tampering with Qwest's lines is illegal.

12. To move the houses, plaintiff was forced to rely on Qwest; to authorize Qwest to exercise independent judgment in temporarily moving its lines and establishing its charges; and to give Qwest responsibility and control over temporarily moving its lines and over its charges.

13. Through his agent, plaintiff hired Qwest in its professional capacity, and was required to enter into a contract with Qwest, namely its special construction proposals.

14. In each instance, Qwest unilaterally set the price of total charges without an itemization and without any negotiation.

15. Each proposal involved a relatively short turnaround time between the date of the Qwest proposal and the necessary date of the house move.

16. Qwest's "take it or leave it" "proposal" form contains a "prior to performance" provision that virtually assures Qwest may proceed without any changes to the contract.

17. Unlike other routers, Qwest demands advance payment, and maintains "sole discretion" to approve a purchase order in lieu thereof, in which case Qwest submits "an invoice of charges" upon completion of the work.

18. With the advance payment, Qwest does not provide an invoice of charges, unlike other routers.

19. Each time plaintiff moved a house, before being allowed to move the houses,

plaintiff has been required to pay defendant Qwest several thousand dollars under its "special construction proposal and terms and conditions," and Qwest has required payment in full of those charges before agreeing to allow the work to be scheduled.

20. On the second and third of these three occasions, defendant has billed plaintiff fraudulent and unlawful charges far exceeding defendant's actual billing rates for the work that was done.

21. Specifically, in the second house move, plaintiff informed Qwest on the Friday before the Sunday move that the charges were too high; Qwest disagreed and maintained that data was properly entered into a computer program; plaintiff paid Qwest under protest; and Qwest promised a refund, which has never been paid.

22. In the third house move, plaintiff entered into the contract with Qwest under protest; Qwest disregarded plaintiff's demands for detailed itemizations; and at no time did Qwest confer with plaintiff regarding the work to be done or the charges to be billed.

23. The following allegation is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery:  On the first of the three moves, defendant billed plaintiff fraudulent and unlawful charges far exceeding defendant's actual billing rates for the work that was done; and during the past ten years defendant has billed others similarly situated (people moving houses) fraudulent and unlawful charges far exceeding defendant's actual billing rates for the work that was done.

### FIRST CLAIM FOR RELIEF
### (Count One: Violation of RICO)

24. Plaintiff adopts by reference the allegations in the foregoing paragraphs.

25. At all material times, defendant Qwest constituted an enterprise or enterprises within the meaning of 18 U.S.C. 1961(4), engaged in, and the activities of which affected, interstate commerce.

26. At all material times, the defendant was associated with the enterprise described in paragraph 11 within the meaning of 18 U.S.C. 1963(a) and (b), and was the direct or indirect beneficiary of the pattern of racketeering activity alleged herein and/or acquired or maintained, directly or indirectly, an interest in and/or control of the defendant company, which is engaged in, or the activities of which affect, interstate or foreign commerce.

27. The defendant, in violation of 18 U.S.C. 1962(a) and (b), (1) engaged in the predicate acts of racketeering alleged herein; (2) received income from the pattern of racketeering activity; and (3) used or invested that income in its operations (directly or indirectly), all in violation of section 1962(a). Schreiber has sufficiently alleged that the corporate defendants were the beneficiaries of the pattern of racketeering activity under section 1962(a) and (b).

28. The pattern of racketeering activity within the meaning of 18 U.S.C. 1961(5) was Qwest's commission of more than two offenses indictable under 18 U.S.C. 1341 (relating to mail fraud) in the past ten years, in furtherance of a continuing scheme to defraud their customers, as alleged herein.

29. Defendant took the fraudulent actions described herein in furtherance of this scheme.

30. On more than two occasions in the past ten years, defendant, having devised the scheme to defraud described above, in furtherance of that scheme, placed in or took from a post

PAGE 5 – PLAINTIFF'S FIRST AMENDED COMPLAINT

office or authorized depository for mail, matter to be sent by, delivered by or received from the U.S. Postal Service, including the billings described herein, and/or knowingly caused such matter to be delivered by mail according to the direction thereon in violation of 18 U.S.C. 1341.

31. Defendant's participation in the conduct of one or more of the enterprise's affairs through a pattern of racketeering in violation of 18 U.S.C. 1962 caused plaintiff to be injured in their business or property and to sustain damages as alleged herein.

32. Pursuant to 18 U.S.C. 1964(c), defendant is liable to plaintiff for the amount of their ultimate losses to date of approximately $9000, trebled, for an total of at least $27,000, plus costs and attorneys' fees.

33. The exact amount owing is ascertained or easily ascertainable by generally recognized standards, and the time from which interest runs can be ascertained, so that plaintiff is entitled to prejudgment interest on the exact amounts owing.

34. The actions of the defendant, as described in this complaint, were deliberate, intentional, and embarked upon with the knowledge of, or in conscious disregard of, the harm that would be inflicted upon plaintiff. As a result of said intentional conduct, plaintiff is entitled to punitive damages against defendant, in an amount sufficient to punish it and to deter others from like conduct.

**(Count Two:  Unlawful Trade Practices)**

35. Plaintiff adopts by reference the allegations in the foregoing paragraphs.

36. Defendant is engaged in a business, occupation, or vocation.

37. In the course of its business, occupation, or vocation, defendant conducted transactions with plaintiff for purchase of services which Qwest requires to be purchased when

PAGE 6 – PLAINTIFF'S FIRST AMENDED COMPLAINT

someone moves a house a substantial distance on public streets within the City of Eugene.

        38.       In the course of its business, occupation, or vocation, defendant committed unlawful trade practices as defined by the Oregon Unlawful Trade Practices Act, in one or more of the following particulars:

           a.    Defendant made false and/or misleading representations concerning the nature of the transaction or obligation incurred by plaintiff, violating O.R.S. 646.608(1)(k), in that defendant represented falsely that the charges billed to plaintiff were defendant's actual costs of doing the work required for moving the houses; and

           b.    Defendant made false and/or misleading representations of fact to plaintiff concerning the offering price or cost for defendant's goods and/or services, violating O.R.S. 646.608(1)(s), in that defendant represented falsely that the charges billed to plaintiff were defendant's actual costs of doing the work required for moving the houses.

        39.       Each of defendant's violations of the Oregon Unlawful Trade Practices Act was willful in that defendant knew or should have known that its conduct was in violation of the Act.

        40.       Defendant's willful use of practices declared unlawful by O.R.S. 646.608 caused plaintiff to sustain damages in the amount of $9000.

        41.       The exact amount owing is ascertained or easily ascertainable by generally recognized standards, and the time from which interest runs can be ascertained, so that plaintiff is entitled to prejudgment interest on the exact amounts owing.

        42.       By reason of the foregoing, defendant is liable to plaintiff for the amount of

plaintiff's loss plus reasonable costs and attorneys' fees under O.R.S. 646.638(3).

43.     The actions of the defendant, as described in this complaint, were deliberate, intentional, and embarked upon with the knowledge of, or in conscious disregard of, the harm that would be inflicted upon plaintiff.  As a result of said intentional conduct, plaintiff is entitled to punitive damages against defendant, in an amount sufficient to punish it and to deter others from like conduct.

### (Count Three: Deceit)

44.     Plaintiff adopts by reference the allegations in the foregoing paragraphs.

45.     Defendant intentionally prepared and gave plaintiff the billings as alleged herein which, either by failures to disclose or affirmative misrepresentations or both, misled plaintiff regarding the amount or costs defendant could charge plaintiff, in that defendant represented falsely that the charges billed to plaintiff were defendant's actual costs of doing the work required for moving the houses.

46.     Defendant's misrepresentations to plaintiff were material, in that knowing the true cost of the services provided by defendant would affect the conduct of reasonable persons in transactions with defendant.

47.     Defendant either had knowledge of the representations' falsity or had a reckless disregard for their truth or falsity.

48.     The false representations were intended to and did induce reliance by plaintiff, in that plaintiff agreed to the "Special construction proposal and terms and conditions" and thereby was charged and paid defendant expenses that were not properly billable.

49.     Defendant's deceptive and misleading misrepresentations caused plaintiff to

PAGE 8 – PLAINTIFF'S FIRST AMENDED COMPLAINT

sustain damages in the amount of $9000.

50.     The exact amount owing is ascertained or easily ascertainable by generally recognized standards, and the time from which interest runs can be ascertained, so that plaintiff is entitled to prejudgment interest on the exact amounts owing.

51.     The actions of the defendant, as described in this complaint, were deliberate, intentional, and embarked upon with the knowledge of, or in conscious disregard of, the harm that would be inflicted upon plaintiff. As a result of said intentional conduct, plaintiff is entitled to punitive damages against defendant, in an amount sufficient to punish it and to deter others from like conduct.

**(Count Four: Tortious Breach of Duty of Good Faith and Fair Dealing)**

52.     Plaintiff adopts by reference the allegations in the foregoing paragraphs.

53.     At all material times, defendant owed plaintiff a duty of good faith and fair dealing.

54.     Defendant Qwest is a monopoly as well as a necessary player in plaintiff's moving of houses, which sets the price unilaterally on a take it or leave it basis.

55.     Defendant breached its duty of good faith and fair dealing to plaintiff in intentionally preparing and giving plaintiff billings which including improper charges and which, either by failures to disclose or affirmative misrepresentations or both, misled plaintiff regarding the amount or costs defendant could charge plaintiff.

56.     Defendant's breach of the duty of good faith and fair dealing caused plaintiff to sustain damages in the amount of $9000.

57.     The exact amount owing is ascertained or easily ascertainable by generally

recognized standards, and the time from which interest runs can be ascertained, so that plaintiff is entitled to prejudgment interest on the exact amounts owing.

58.     The actions of the defendant, as described in this complaint, were deliberate, intentional, and embarked upon with the knowledge of, or in conscious disregard of, the harm that would be inflicted upon plaintiff. As a result of said intentional conduct, plaintiff is entitled to punitive damages against defendant, in an amount sufficient to punish it and to deter others from like conduct.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment in his favor and against defendant, as follows:

(a) Awarding plaintiff such damages as he has sustained as a result of defendant's actions, plus prejudgment interest, trebled as provided for in 18 U.S.C. § 1964(c);

(b) An injunction prohibiting defendant from continuing to issue unlawful billings;

(c) Awarding plaintiff the costs of this action including reasonable attorney fees, pursuant to ORS 646.638(3) and/or 18 U.S.C. § 1964(c);

(d) Granting any such other relief as the court finds just and appropriate.

Respectfully submitted January 18, 2011.

    /s/  Marianne Dugan
Marianne Dugan, OSB # 93256
Attorney for Plaintiff
259 E. 5th Ave., Ste 200-D
Eugene, Oregon 97401
(541) 338-7072